UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AUTUMN RIDLER, | ) | CASE NO. 5:21-cv-776 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JO-ANN STORES, LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion for summary judgment filed by defendant, Jo-Ann Stores, LLC. (Doc. No. 25.) Any opposition to the motion was due on May 27, 2022. (*See* First Amended Case Management Plan and Trial Order, Doc. No. 19.) No opposition has been filed by the pro se plaintiff, Autumn Ridler, nor has any extension of time been sought. For the reasons set forth herein, the motion is granted.

**I.     Procedural Background**

On March 10, 2021, plaintiff Autumn Ridler ("Ridler" or "plaintiff") filed a complaint in the Summit County Court of Common Pleas against defendant Jo-Ann Stores, LLC ("Jo-Ann" or "defendant") alleging interference and discrimination under the Family and Medical Leave Act ("FMLA"), as well as a state law claim under Ohio Rev. Code § 4112.02(A)(2) for disability discrimination based on an alleged denial of her request for accommodation. On April 13, 2021, Jo-Ann timely removed the matter to this Court on the basis of federal question jurisdiction. (*See* Doc. No. 1.)

Ridler was represented by counsel at the time she commenced this lawsuit and for about five (5) months after; but, on August 23, 2021, her counsel moved to withdraw. (*See* Doc. No. 13.) The Court granted the motion after conducting a video conference in which Ridler herself participated, along with her withdrawing counsel and defendant's counsel. At that time, Ridler acknowledged that she would either need to obtain new counsel or represent herself; she ultimately took the latter route. Ridler further acknowledged that she would need to comply with dates and deadlines in the Case Management Plan and Trial Order ("CMPTO"), and that failure to do so could result in sanctions, up to and including dismissal of her case. Ridler was advised by the Court that, if she chose to proceed pro se, she would be permitted access to the Court's electronic filing system; however, Ridler never availed herself of that opportunity. The Court also emphasized—and Ridler acknowledged—that Ridler would need to comply with defendant's discovery requests or suffer sanctions up to and including dismissal. (*See* Minute Orders, 9/9/2021; 10/29/2021; 12/16/2021.)

Following the original Case Management Conference, the Court issued the CMPTO, a copy of which was supplied to Ridler at the time her counsel was permitted to withdraw. (*See* Minute Order, 9/9/2021.) Some of the deadlines, including dispositive motion briefing deadlines, were subsequently extended upon the parties' joint request due to some discovery problems. (*See* Minute Order, 12/16/2021.) As of January 24, 2022, the deadline for filing a dispositive motion was April 29, 2022. (Doc. No. 19, First Amended CMPTO.)

Jo-Ann timely filed its motion, now before the Court, and served a time-stamped copy upon Ridler by email. (*See* Doc. No. 25, Certificate of Service.) Ridler has never claimed not to have received this service. As set by the First Amended CMPTO, a copy of which was

2

mailed to Ridler (*see* docket entries dated 1/24/22), the deadline for filing any opposition to the motion was May 27, 2022. Ridler has neither filed any opposition nor sought a further extension of that deadline.

In a joint status report filed on June 9, 2022, plaintiff states that she "[doesn't] agree with the dismissal and had no idea [she] had a deadline to dispute it." (Doc. No. 26 at ¶ 3.) Notwithstanding this assertion by plaintiff,[1] the record shows that Ridler was supplied with a copy of the original CMPTO, that she and defendant later jointly requested an extension of the dispositive motion briefing deadlines due to a discovery problem (which was discussed during a telephone conference that Ridler participated in on December 16, 2021), and that they subsequently jointly sought and were granted a further extension of the briefing (with the dates being sent to Ridler by regular mail). This is evidence of Ridler's knowledge both that there was a deadline for opposing the motion and what that deadline was. Therefore, the motion is unopposed and ripe for determination.

## II. Summary Judgment Standard

The Court will grant a properly supported motion for summary judgment if "the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing summary

---

[1] An assertion by Ridler that she "[doesn't] agree with the dismissal" is insufficient to serve as an opposition under Fed. R. Civ. P. 56 and the case law set forth herein that interprets the rule. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (the party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial[]") (alteration in original) (quotation marks and citation omitted). Even a pro se litigant such as Ridler must comply with these fundamental principles. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) for the proposition that "where . . . a pro se litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant.").

3

judgment motions, this Court must view evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson*, 477 U.S. at 248. Determining whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id.* at 252.

The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001)). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) (further citation omitted)). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quotation marks and citation omitted).

Where, as here, the Court is faced with an unopposed motion for summary judgment, "reliance on the facts advanced by the movant is proper and sufficient[,]" and the Court is not required to "conduct its own probing investigation of the record" to discover an issue of

4

material fact. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404, 405 (6th Cir. 1992). Nevertheless, the Court must still "carefully review the legitimacy of such an unresponded-to motion, even as [the Court] refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id*. at 407. As such, the Court will consider Jo-Ann's motion, and the evidence submitted therewith, to ensure defendant has met its burden. *See Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013) (citing *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380–81 (6th Cir. 2011) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [his] burden.") (further citation omitted)).

### III. Analysis

#### A. Factual background[2]

Ridler worked for Jo-Ann. She began her employment as a part-time seasonal team member in 2016, but was subsequently hired as a full-time team member in 2018. (Doc. No. 1-1, Complaint ¶ 5.) In 2019, her title changed to Inventory Coordinator. (Doc. No. 24, Ridler Deposition at 27 (100) (correcting the 2018 date in ¶ 5 of the complaint).)[3]

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system, a citation practice recently adopted by this Court.

[3] Ridler's deposition transcript, with its thirty-nine (39) exhibits, was improperly filed as a single, consecutively page-numbered document. (*See* Doc. No. 4, Initial Standing Order at 2, Sections A and B (describing the proper method of filing).) Further complicating matters, the transcript itself is in the four-pages-to-one format. To eliminate confusion herein, citations to Doc. No. 24 will be as follows: (1) citations to the deposition *testimony* will include the page number reference as described in note 2 above plus, in parentheses, the actual deposition page number; and (2) citations to any *exhibit* will include the page number as described in note 2 above plus the name of the exhibit cited.

As Inventory Coordinator, Ridler was responsible for "review[ing] inbound product deliveries and work schedules to ensure delivery coverage[;] [and for] . . . maintain[ing] backroom standards by accurately processing freight and taking full account of physical inventory to ensure product is continuously flowing to the sales floor." (Doc. No. 24 at 129, (Ex. D, Inventory Coordinator job overview).) Ridler admitted that this job required her to be on her feet most of the day. She had to stand to perform a majority of her job duties and typically walked two (2) to seven (7) miles per day. (*Id*. at 18 (64).) According to the Inventory Coordinator Job Overview, Ridler was responsible for, *inter alia*, "receiv[ing] and unload[ing] truck deliveries[;]" "enter[ing] and exit[ing] truck bed[s] to remove freight[;]" "[u]nload[ing] freight from the truck and sort[ing] it[;]" and "lift[ing] boxes from truck[s.]" (*Id*. at 129 (Ex. D).) All of this work was typically performed by Ridler without assistance from anyone else. (*Id*. at 66 (56).) There is no dispute that the position, as defined by Jo-Ann, was physically demanding.

On or about June 18, 2020, Ridler started a medical leave of absence (due to back pain) and began collecting short term disability benefits. (*Id*. at 24 (86–87).) Ridler admitted that Jo-Ann granted the full twelve (12) weeks of leave to which she was entitled under the FMLA. (*Id*. at 26 (93–94).) When her FMLA leave expired on or about September 10, 2020, Jo-Ann notified Ridler that she may be eligible for additional benefits should she still be unable to work. (*Id*. at 26 (95).) Ridler, however, was cleared to return to work on or about September 28, 2020 with permanent restrictions that she be allowed to sit for fifteen (15)

minutes out of every hour and that she lift no more than forty (40) pounds. (*Id*. at 37 (138); Doc. No. 25-1, Gilfillan Declaration[4] ¶ 7.)

Jo-Ann reviewed the proposed restrictions and determined that it was unable to accommodate them at that time because it had no work presently available that met Ridler's restrictions. (Doc. No. 25-1 ¶ 8.) Jo-Ann notified Ridler that it could not accommodate the job restrictions imposed by her doctor, but provided an alternative accommodation by offering to extend her medical leave of absence through March 2021. (*Id*. ¶ 9.)[5] Ridler was dissatisfied with the proposed accommodation, believing Jo-Ann should have instead offered her an entirely different position (*i.e.*, that of a "full-time team member, not a full-time inventory coordinator"). She admits, however, that she never made any such request or in any way challenged the denial. Rather, Ridler stopped communicating with Jo-Ann, retained an attorney, and "followed the advice of counsel." (Doc. No. 24 at 37 (139–40); 38 (144); 40 (149).)

On or about September 30, 2020, District Manager David Grumbos learned that Ridler had been working for another employer—the U.S. Census Bureau—while she was on her leave of absence from Jo-Ann; Ridler admitted this. (Doc. No. 25-1 ¶ 10; Doc. No. 24 at 39 (145–46).) At that time, Ridler had a pending request for an extension of her short term

---

[4] Shannon Gilfallan has been employed by Jo-Ann since September 2020 as Manager, Team Member Relations, Leaves, and Workers' Compensation. (Doc. No. 25-1 ¶ 1.)

[5] At her deposition, Ridler testified that the disability administrator told her that, to stay on leave, her doctor would need to change her return to work date (which the doctor declined to do). (Doc. No. 24 at 38 (143).) But Ridler also admitted that she never contacted Jo-Ann with this additional information; she simply contacted an attorney. (*Id*.)

7

disability benefits until October 30, 2020. Jo-Ann's Team Member Relations ("TMR") group began an investigation into Ridler's potential policy violations. (Doc. No. 25-1 ¶¶ 10–11.)

On October 5, 2020, TMR Specialist Mitch Fretch contacted Ridler as part of Jo-Ann's investigation of her outside employment, and Ridler admitted she had been working for the U.S. Census Bureau despite being on a medical leave of absence and having collected short term disability benefits related to her employment with Jo-Ann. (*Id.* ¶ 12.) Jo-Ann terminated Ridler's employment effective October 6, 2020, because she violated the company's Leave of Absence Policy (*see* Doc. No. 24 at 141 (Ex. G)) and Performance Accountability Policy (*see id.* at 138 (Ex. F)) by working for another employer while she was on a medical leave of absence and collecting short term disability benefits. (Doc. No. 25-1 ¶ 13.)

Ridler alleges in her complaint that she was terminated due to her disability and in violation of the FMLA and, in particular, for requesting an accommodation. (Doc. No. 1-1 ¶ 19.) But at her deposition, Ridler testified:

> I was terminated, but technically the termination, to my knowledge, . . . did not have anything to do with the reasonable request for accommodation. So both things happened, but they were not technically related to each other.

(Doc. No. 24 at 28 (103).) Ridler responded "[c]orrect" when asked whether she was terminated because she was working for another employer while she was on a leave of absence from Jo-Ann. (*Id.*)

Jo-Ann argues that its decision to terminate Ridler's employment was based on a legitimate non-discriminatory reason and no reasonable jury could determine otherwise.

## B. Discussion

Ridler's complaint alleges two theories for recovery under the FMLA: interference (or entitlement), which arises under 29 U.S.C. § 2615(a)(1) ("[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter[]") and retaliation (or discrimination), which arises under 29 U.S.C. § 2615(a)(2) ("[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter[]"). (*See* Doc. No. 1-1 ¶¶ 21–22.) Ridler also raises a claim of failure to accommodate under Ohio Revised Code § 4112.02(A)(2), which she characterizes as "disability discrimination." The Court will address each claim in turn.

### 1. FMLA Interference (or Entitlement)

To establish a claim of FMLA interference (or entitlement), Ridler must show that "(1) she was an eligible employee as defined under the FMLA; (2) her employer was a covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take FMLA leave; and (5) her employer denied FMLA benefits to which she was entitled." *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577–78 (6th Cir. 2007) (citation omitted).

Jo-Ann concedes that Ridler can establish the first four elements, but not the fifth. And Ridler herself admitted at her deposition that she was *not* denied her FMLA benefits; rather, she was given all the leave to which she was entitled. (*See* Doc. No. 24 at 26 (93–94).)

Thus, Ridler fails to establish a prima facie case of FMLA interference[6] and Jo-Ann is entitled to summary judgment on that claim.

### 2. FMLA Retaliation (or Discrimination)

To establish a claim of FMLA retaliation (or discrimination), Ridler must show that "(1) [s]he was engaged in a statutorily protected activity; (2) [Jo-Ann] knew that [s]he was exercising [her] FMLA rights; (3) [s]he suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012).

"FMLA interference claims [are assessed] under the burden-shifting framework defined by *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Mullendore v. City of Belding*, 872 F.3d 322, 327 (6th Cir. 2017) (further citation omitted). Under that framework, a plaintiff must first establish all the elements of a prima facie case. If she succeeds, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the adverse employment action. Defendant will not be liable unless plaintiff can then show that the articulated reason is mere pretext for retaliation or discrimination.

Here, Jo-Ann argues that Ridler cannot establish the fourth element of her prima facie case—the causal connection. To establish a causal connection, Ridler must "proffer evidence

---

[6] As discussed below with respect to Ridler's FMLA retaliation claim, even when a plaintiff establishes a prima facie case, a defendant may not be liable if it articulates a legitimate, non-discriminatory reason for the adverse employment action. This is known as *McDonnell Douglas* burden-shifting. There is some question whether burden-shifting applies to an interference claim. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 762–63 (6th Cir. 2012) (discussing cases and determining that it does apply under the holding of *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008)). Since Ridler, by her own admission, cannot establish the fifth element of a prima facie case, that ends the analysis.

sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (quotation marks and citation omitted). There is no such evidence and, in fact, Ridler affirmatively testified at her deposition that, although she "was terminated," it "did not have anything to do with the reasonable request for accommodation." (Doc. No. 24 at 28 (103).)

Further, even if Ridler were able to establish her prima facie case of FMLA retaliation, Jo-Ann would not be liable because it has shown, and Ridler has admitted, that Jo-Ann terminated Ridler's employment for "a legitimate reason unrelated to the exercise of FMLA rights[.]" *Mullendore*, 872 F.3d at 327–28 (citation omitted).[7] In particular, Ridler was terminated because she admittedly engaged in other employment *while* she was on her FMLA leave and collecting disability. (*See* Doc. No. 25-1 ¶ 10; Doc. No. 24 at 39 (145–46).)

Jo-Ann is entitled to summary judgment on Ridler's FMLA retaliation claim.

### 3. Disability Discrimination under Ohio Law

In stating her disability discrimination claim under Ohio law in Section VI of her complaint, Ridler alleges, somewhat imprecisely, that "[t]he conduct] of [Jo-Ann] in imposing new weight-lifting requirements in order to permit [p]laintiff to return to work and its failure to engage in the interactive process constitutes disability discrimination in violation of R.C.

---

[7] Ridler's only complaint is that Jo-Ann should have put her in an "equal position . . . even if it wasn't the inventory coordinator position." (Doc. No. 24 at 26 (94).) But regulations governing FMLA claims expressly state that "if the employee is unable to perform an essential function of the position because of a physical or mental condition . . . the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.216(d). Here, as more fully explained below under the section addressing the state law claim, Ridler's return-to-work restrictions rendered her incapable of performing at least two of the essential elements of the Inventory Coordinator position.

§4112.02(A)(2)." (Doc. No. 1-1 ¶ 26.) In support of this claim, Ridler incorporates by reference all of her factual allegations, which include the following:

> 13. Plaintiff was cleared by her medical provider to return to work on August 17, 2020 with a weight-lifting restriction of 40 lbs. and 15 minutes rest every hour.
>
> 14. When Plaintiff informed Defendant she was able to return to work, she was informed that she would not be allowed to return to work until she was able to lift 50 lbs.
>
> 15. Before she took FMLA leave she was not subject to a 50 lbs. weight-lifting requirement.
>
> \* \* \*
>
> 19. Defendant refused to accept the Plaintiff's reasonable requests for an accommodation as set forth above and terminated her employment on or about October 6, 2020 by way of a voicemail from the assistant store manager.

(Doc. No. 1-1 ¶¶ 13–15, 19.)[8]

Jo-Ann has construed this claim as one for "failure to accommodate" even though the actual claim as stated by Ridler is for "failure to engage in the interactive process." Jo-Ann's interpretation of the complaint is reasonable, since "the liability imposed is for the failure to reasonably accommodate, not for the failure to engage in the interactive process." *Matasy v. Youngstown Ohio Hosp. Co., LLC*, 95 N.E.3d 744, 753 (Ohio Ct. App. 2017) (citation omitted).

In order to show disability discrimination under Ohio Rev. Code § 4112.02(A), a plaintiff must establish that "(1) he or she was disabled; (2) the employer took an adverse

---

[8] In ¶ 16 of the complaint, Ridler also alleged: "At least one other employee with a back injury at the Fairlawn store was permitted to perform her duties which were substantially similar to Plaintiff's with an accommodation of sitting rest periods every hour." Arguably, this is an attempt to state a disparate treatment claim; but Ridler has not identified the employee and/or shown that the employee's position was comparable to hers. To withstand a summary judgment motion, Ridler cannot rely on this conclusory allegation.

employment action against the plaintiff, at least in part, because the plaintiff was disabled; and (3) the plaintiff, though disabled, can safely and substantially perform the essential functions of the job in question." *Anderson v. Bright Horizons Children's Ctrs., LLC*, No. 20AP-291, 2022 WL 910157, at *4 (Ohio Ct. App. Mar. 29, 2022) (citing *Columbus Civ. Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206 (Ohio 1998)) (further citation omitted).

Where the claim includes an element of failure to accommodate, "the employee's prima facie case includes a requirement that [the plaintiff] demonstrate [s]he is otherwise qualified for the position, *i.e.*, with the reasonable accommodation." *Matasy*, 95 N.E.3d at 751 (citing cases). Therefore, Ridler carries "the initial burden of showing that [she] could safely and substantially perform the essential requirements of the [Inventory Coordinator position] with reasonable accommodation." *Ohio Civ. Rights Comm'n v. Case W. Res. Univ.*, 666 N.E.2d 1376, 1384–85 (Ohio 1996) (citing Ohio Admin. Code 4112–5–02(K)).

"Thereafter, the burden shifts to [Jo-Ann] to demonstrate that [Ridler] is not 'otherwise qualified,' *i.e.*, the accommodations are not reasonable because they require fundamental alterations to the essential nature of the [position] or because they impose undue financial or administrative burdens." *Id*. at 1385 (citation omitted).

As a threshold matter, Ridler's allegation in ¶ 15 of her complaint that, prior to her FMLA leave, she was not subject to a 50-pound weight requirement is patently false, as demonstrated by the job overview of the Inventory Coordinator position. (*See* Doc. No. 24 at 130 (Ex. D).) Moreover, Ridler is unable to meet her burden of showing, as part of her prima facie case, that *with* the requested accommodations of 15 minutes of rest every hour and a 40-pound lifting limit, she could "safely and substantially perform the essential requirements" of

the Inventory Coordinator position. In fact, the position overview specifically lists among the "physical demands" that the person needs to "[s]tand during an entire shift (other than normal break time)[,]" and "[i]ndividually lift[] up to 50 lbs. unassisted, and group lift 50+lbs.–97 lbs.)." (*Id.*) Ridler confirmed both of these job requirements during her deposition (*see* Doc. No. 24 at 18 (64); 66 (56)), and she has not come forward with any evidence that these requirements are *not* essential to the position. Thus, Ridler fails at the prima facie stage of this claim.

Even if one were to find that these two requirements are not essential,[9] Ridler's claim would still fail because Jo-Ann offered Ridler the alternate accommodation of further extending her leave. (*See* Doc. No. 24 at 210 (Ex. AA).) Courts have found that "[w]here there is more than one reasonable accommodation, the choice of accommodation is the employer's." *Smith v. Honda of Am. Mfg., Inc.*, 101 F. App'x 20, 25 (6th Cir. 2004) (per curiam).[10]

Although Ridler claimed at her deposition that Jo-Ann could have (and should have) given her a different position (which, she also admits, she never requested) (*see* Doc. No. 24 at 37 (139–40); 38 (144); 40 (149)), "[a]n employer is not required to create a position or make work for a handicapped employee." *DeBolt v. Eastman Kodak Co.*, 766 N.E.2d 1040, 1056 (Ohio Ct. App. 2001).

---

[9] "The reasonableness of a requested accommodation is generally a question of fact." *Coomer v. Opportunities for Ohioans with Disabilities*, No. 21AP-158, 2022 WL 406113, at *4 (Ohio Ct. App. Feb. 10, 2022). But Ridler will not be permitted here, where she filed no opposition, to rest on the mere allegations of her complaint to create a question of fact for a jury.

[10] Disability discrimination claims under Ohio law are generally analyzed the same as claims under the federal Americans With Disabilities Act. *See Pflanz v. Cincinnati*, 778 N.E.2d 1073, 1089 (Ohio Ct. App. 2002).

Jo-Ann is entitled to summary judgment on Ridler's state law claim of disability discrimination by failure to accommodate.

## IV. Conclusion

For the reasons set forth herein, Jo-Ann Stores LLC's unopposed motion for summary judgment (Doc. No. 25) is granted. This case is closed, with each party to bear its own costs.

**IT IS SO ORDERED**.

Dated: June 29, 2022

                                             **HONORABLE SARA LIOI**
                                             **UNITED STATES DISTRICT JUDGE**